THE HOUSTON & TEXAS CENTRAL RAILWAY COMPANY v. ELIZABETH P. WALLER.

(Case No. 1445.)

1. DISABILITY OF JUROR — MENTAL DISTRESS NO EXCUSE.— By mental distress of a juror, occasioned by sickness in his family or of others demanding his presence at home or elsewhere, he is not "disabled from sitting," within the meaning of the phrase as used in article V, section 13 of the constitution, so as to empower the remainder of the jury to render the verdict over the objections of either party.

2. EVIDENCE, ADMISSIBLE WHEN — DISREGARDED — INTOXICATION.— A man whilst crossing the track of a railroad, at a public crossing, at night, was struck by the tender of a switch engine and fatally injured. Suit was brought alleging negligence on the part of the railroad company in various respects, and especially in the absence of sufficient lights. The answer of the company set up intoxication on the part of the man killed, making him unconscious of the danger; and that he recklessly attempted to cross the track in front of an approaching engine. *Held*,

(1) The depositions of witnesses as to the arrangement of lights, etc., on another occasion, but on the same sort of a night, were admissible if that arrangement had not been materially changed since the accident; but if such change had taken place, then those depositions would be irrelevant and inadmissible.

(2) Where there was conflicting testimony as to whether a change of the lights, etc., had taken place, the court should not have excluded the deposition, but should have instructed the jury to disregard the evidence if they found that the surroundings had, in fact, undergone a material change.

(3) That the sobriety or intoxication of deceased was a proper

subject for the consideration of the jury in determining whether he exercised due care or not.

3. CONTRIBUTORY NEGLIGENCE — QUESTION FOR THE JURY.— The court was asked to instruct the jury that the failure of one about to cross a railroad track to look each way for an approaching engine is negligence. Also if the train was running at such a rate of speed as would have enabled deceased to have seen and avoided it, then his unsuccessful attempt to do so in front of it was negligence. These charges took the question of contributory negligence from the jury and were rightly refused.

APPEAL from Austin. Tried below before the Hon. L. W. Moore.

*Geo. Goldthwaite,* for appellant.

I. The judge presiding committed error in discharging the juror Thomas H. Bradbury in the peremptory manner and under the circumstances shown. Bill of Rights, secs. 15–29; State Const., art. V, sec. 13; R. S., art. 3101.

II. The juror did not die pending the trial, nor was he disabled from sitting, and it was error in the court to discharge him. R. S., art. 3057.

III. The judge presiding committed error in overruling the defendant's objections to the depositions of R. P. Faddis and W. Haveman.

IV. The court erred in permitting the testimony of the witnesses R. P. Faddis and Wm. Haveman to be read to the jury over the objections of the defendant as made upon the trial.

V. The whole of said deposition of said witnesses was irrelevant to any issue in the case. It was calculated and had a tendency to mislead the jury to the prejudice of the defendant, and it was error to admit it. H. & T. C. R. W. Co. *v.* Burke; Waul *v.* Hardin, 17 Tex., 558.

VI. The judge presiding committed error in refusing to give the three several charges prayed for by the defendant, as shown by the record.

1. The first charge asked and refused, to wit: "That as a matter of fact a railroad track in itself is a warning of

danger to him who is about to cross it, and common prudence requires him who is about to cross a track to look each way for an approaching engine, and a failure to do so is negligence," is a declaration of the law; it was applicable to the facts of the case, and the refusal to give it was error.   Wharton on Negligence, § 382, and notes thereto; Stubley v. L. & N. W. R. W. Co., Law Rep., 1 Exch., 13; Penn. R. W. Co. v. Richter and Wife, 42 N. J., 180; Same Case in Am. and Eng. Railway Cases, p. 220; Zimmerman v. H. & St. J. R. W. Co., 71 Mo., 476; Same Case in Am. and Eng. Railway Cases, 191.

2. The second charge asked and refused, to wit: "If you believe, from the evidence, that the colliding train was, at the time of its collision with said Waller, moving at such a rate of speed as would have enabled the deceased H. B. Waller to have seen the coming train and to have avoided it, then his unsuccessful attempt to do so in front of it was, in fact and law, negligence, which precludes a recovery in this case, and if you so believe, you will find for the defendant,"— directed the attention of the jury to a material issue made by the plaintiff. It is the duty of the court to instruct the jury as to where "the knot of the business is." The charge was proper, and it was error to refuse it.   Blackburn v. Crawfords, 3 Wall. (U. S.), 194.

3. The third charge asked and refused, to wit: "Whether the deceased H. B. Waller was at the time of the happening of the accident which caused his death, in the exercise of due care and caution under the circumstances which at the time surrounded him, is the material question for your consideration in this case, and you are not only authorized, but it is your duty, to consider every fact and circumstance which is in evidence before you, tending to throw any light upon the subject; and in the absence of any affirmative evidence as to the exercise of care and caution in attempting to cross the railway track at the time, such as stopping, looking and listening, it is

your duty to take into consideration his condition at the time of his crossing; and his sobriety or intoxication at the time of his crossing the track, as shown by the testimony, is a proper subject for your consideration in determining whether he was at the time of his crossing in the exercise of such care as a sober, careful, prudent man would have exercised under the circumstances surrounding the case as shown by the testimony,"— was an unexceptional charge, declaring the law applicable to the facts of the case in evidence, and it was error to refuse it. Same authorities as under preceding propositions.

*Hume & Shepard, Chesley & Haggerty, T. S. Reese* and *John P. Bell,* for appellees.

I. The court did not err in holding the juror Bradbury disabled from sitting, and in discharging him. The language of the constitution is followed in the code, and provides that where, pending a trial, any number of jurors not exceeding three shall die or be disabled from sitting, the remainder of the jury shall have power to render a verdict. Const., art. V, sec. 13; Rev. Civ. Stat., art. 3101. This language does not declare that the disability shall be physical, and it can well be imagined that the news of the dangerous illness of his child would be more likely to disable a juror from the proper performance of his duty than would any ordinary physical suffering. The object of the change in the law was to secure a trial by jurors in the full possession of all of their faculties, and to avoid the delay and inconvenience that formerly, in long trials, often arose from the illness or temporary incapacity of one or more jurors. The trial judge read the letter, observed its effect upon the juror, and of his own motion excused him. This was an exercise of judicial discretion which this court would not lightly disturb. The court will observe from the bill of exceptions that defendant merely objected to the discharge of the juror. The coun-

sel did not ask the court to postpone, continue or reset and order another jury, or to grant a mistrial. If there were any error in excusing the juror, it was cured by the failure to ask any affirmative action; the party acquiesced in the trial. If he had urged a request for any such action the court might have granted it. He took the chances of a verdict for him as well as against him, and it is now too late for him to complain. A party can waive a full panel at any time.

II. The first and second instructions asked by defendant were properly refused, because their effect would have been to take the question of contributory negligence from the jury. T. P. R. R. Co. v. Murphy, 46 Tex., 356; H. & G. N. R. R. Co. v. Parker, 50 Tex., 345; H. & T. C. R. R. Co. v. Sympkins, 54 Tex., 615; Brassell v. N. Y. C. R. R. Co., 84 N. Y., 241; Terry v. Jewett, 78 N. Y., 338; Doss v. M. K. & T. R. R. Co., 59 Mo., 27 (21 Am. Rep., 371); Ind. R. R. Co. v. Carr, 35 Ind., 510 (4 Am. R'y Rep., 495); Maginnis v. R. R. Co., 52 N. Y., 215 (4 Am. R'y Rep., 506); R. R. Co. v. Dignan, 56 Ill., 487 (4 Am. R'y Rep., 487); Penn. R. R. Co. v. Weiss (Pa., 1878, 7 Rep., 56); Tabor v. R. R. Co., 46 Mo , 253 (2 Am. Rep., 517); Ehlert v. Green B. R. R. Co. (Wis., 1880), 10 C. L. J., 316; citing Urbank v. R. R. Co., 47 Wis., 50; 2 Thompson on Neg., 1239, § 13; Wharton on Neg., § 386; Shearman & Red. on Neg., §§ 31–4. It was not error to refuse the third instruction of defendant, because it was a comment upon the weight of the evidence, and assumed the existence of facts in controversy. 3d. Whether the deceased H. B. Waller was at the time of the happening of the accident which caused his death, in the exercise of due care and caution under the circumstances which at the time surrounded him, is the material question for your consideration in this case, and you are not only authorized, but it is your duty, to consider every fact and circumstance which is in evidence before you, tending to throw any light upon

the subject; and in the absence of any affirmative evidence as to the exercise of care and caution in attempting to cross the railway track at the time, such as stopping, looking and listening, it is your duty to take into consideration his condition at the time of his crossing; and his sobriety or intoxication at the time of his crossing the track, as shown by the testimony, is a proper subject for your consideration in determining whether he was at the time of his crossing in the exercise of such care as a sober, careful, prudent man would have exercised under the circumstances surrounding the case as shown by the testimony. Rev. Civ. Stat., art. 1317; Wood *v.* Chambers, 20 Tex., 252-3; T. P. R. R. Co. *v.* Murphy, 46 Tex., 366-7; Castro *v.* Illies, 22 Tex., 503-4; Johnson *v.* Brown, 51 Tex., 75; Howerton *v.* Holt, 23 Tex., 61; Brown *v.* The State, 23 Tex., 200-2; H. & T. C. R. R. Co. *v.* Nixon, 52 Tex., 26; Holmes, Adm'r, *v.* Oregon, 5 Fed. Rep., 528 (1 Am. & Eng. R. Cas., 623-4); H. & T. C. R. R. Co. *v.* Sympkins, 54 Tex., 615; Penn. R. R. Co. *v.* Weber, 76 Pa. St., 157; 18 Am. Rep., 407.

Gould, Chief Justice.— The constitution of this state directs that "petit jurors in the district courts shall be composed of twelve men." In the latter clause of the same section it reads thus: "When pending the trial of any case, one or more jurors, not exceeding three, may die, or be disabled from sitting, the remainder of the jury shall have the power to render the verdict." Art. V, sec. 13. The statute repeats these provisions and adds, that "the parties may by consent agree, in a particular case, to try with a less number,"— but that "no verdict shall be rendered in any cause, except upon the concurrence of all the members of the jury trying the same." R. S., arts. 3100-3.

It appears by bill of exceptions in this case, that pending the trial, and "after the depositions of several wit-

nesses had been read, a communication in writing was
handed to the judge presiding which purported to be from
the wife of the juror Thomas H. Bradbury to the said
Bradbury, informing him that one of their children was
sick, and requesting him to come home if he could.   The
judge presiding being of the opinion that this information
disabled the said juror from sitting, and thereupon per-
emptorily discharged him, said Bradbury, from the jury,
and ordered the trial to proceed with the remaining
eleven, over the objection of the defendant's attorneys."
This bill of exceptions is approved with the following ex-
planation:  "The court asked the juror if the intelligence
in the written communication of his wife satisfied him
that it was necessary for him to be at home to attend his
sick child.   The juror answered it did, and manifested in
his answer such distress as such intelligence would natu-
rally create in a parent.   And the court was satisfied, in
his present state of mind, that said juror was disabled
thereby from further acting as a juror."

Our opinion is that a juror is not "disabled from sit-
ting" within the meaning of the constitution by mere
distress of mind.   Such distress, caused by information of
sickness in his family, calling for his presence at home,
might be a sufficient cause for suspending the progress of
the trial, if in the judgment of the court the emergency
required such a course.   But this is not the character of
disability which the constitution classes side by side with
death.   If a juror becomes so sick as to be unable to sit
longer, he is plainly disabled from sitting.   Ray v. State,
4 Tex. Ct. App., 454.   If by reason of some casualty or
otherwise he is physically prostrated, so as to be wholly
incapable of sitting as a juror, or loses his mental powers,
so as to become insane or idiotic, then too he would be
disabled from acting as a juror.   But, without deeming
it proper to attempt to define fully the meaning of the ex-
pression used in the constitution, we are satisfied that the

causes which disable the juror from sitting, and justify the extreme course of allowing, over a party's objection, a verdict to be rendered by the remainder of the jury, must be of a nature more directly showing his physical or mental incapacity than mere mental distress occasioned by the sickness of others, and the feeling that duty to the sick demanded his presence elsewhere. Extreme cases of the kind, however strongly they may appear to the court to release the juror, do not belong to the class provided for by the constitution or statute.

We think that it appears from the bill of exceptions that the court, over the objections of the defendant, ordered the trial to proceed with eleven jurors, and that this error of the court is fatal to the judgment.

Another question is made over the admission of certain depositions.

Hiram B. Waller, on the night of November 30, 1877, at the junction in the town of Hempstead of the H. & T. Central with its Austin branch, whilst passing from a hotel to meet the approaching passenger train, bound north on the main track, and whilst crossing for this purpose the track of the branch road at a public crossing, was struck by a tender propelled by a switch engine moving backwards and northward on the branch track, and injured so that he died. His widow and children brought this suit, alleging that the injury was caused by the negligence of the company and its servants, specifying various matters in which it was claimed the company was negligent, and complaining amongst other things of the absence of sufficient lights. The only special answer alleged that Waller was at the time so under the influence of intoxicating liquors, imbibed to excess, as to make him unconscious and regardless of impending danger, and that he was injured whilst recklessly attempting to cross the railway track in front of the approaching engine. The sufficiency of the lights provided about the

railroad platform where the casualty happened became material as bearing on the question of negligence in the company in that regard, and also as bearing on the question whether Waller saw, or could have seen, the approaching tender and engine in time to have avoided the accident. The depositions objected to as irrelevant were those of two persons who over two years after the accident, but near the same hour of a not dissimilar night, and whilst an engine and tender were standing on the branch road at a point some few yards south of where Waller was when injured, as to the possibility of distinguishing the tender with the lights as then arranged. If the arrangement of the lights and other surroundings were substantially the same as on the night of November 30th, we see no reason why this evidence should have been excluded. If, however, by a change in the location of the lights, especially of what seems to have been the main one, a stationary headlight, the circumstances were materially altered, we do not see that the testimony of these witnesses as to what they saw or could not see was relevant or admissible. There is the evidence of one witness that the location of the headlight had been changed materially. Quite a number of other witnesses, however, speak of the location of this light as being the same all the time. In this conflict of the evidence we are not of the opinion that the court should have excluded the depositions, but think that the jury should have been instructed to disregard them, if they found that in fact the surroundings were materially changed from what they were when Waller was injured.

Several charges were asked by defendant, and their refusal is assigned as error; but as the judgment is to be reversed for other reasons, it is only necessary to say of the first and second, that for the court to have given them would have been to have taken the question of con-

tributory negligence from the jury, and that under the facts in evidence that question was clearly one of fact to be submitted to the jury.

Whilst we think that the third charge as asked was objectionable in its statement of the material question for the consideration of the jury, we are of opinion that the court might with propriety have told the jury that the sobriety or intoxication of Waller at the time of his crossing the track was a proper subject for their consideration in determining whether he was at the time in the exercise of due care or not. The pleadings of defendant had charged that the injury was the result of Waller's recklessness, induced by excessive drinking. There was much evidence pro and con on that point. It seems to us a question requiring to be more distinctly called to the attention of the jury than it was in the charge given.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.