

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-12-00108-CV

**IN THE INTEREST OF M.G.N.** and A.C.N., Minor Children

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-17947
Honorable Antonia Arteaga, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:       Karen Angelini, Justice
               Sandee Bryan Marion, Justice
               Patricia O. Alvarez, Justice

Delivered and Filed:  April 24, 2013

REVERSED AND REMANDED

The final decree of divorce dissolving the marriage of Appellant George Carl Noyes and Appellee Monica Noyes appointed them as joint managing conservators of their two children. Later, each party sought to be designated as sole managing conservator, and they agreed to have the issue determined by the jury. An eleven-member jury returned a verdict denying both parties' requests for sole managing conservatorship. On appeal, George asserts that his constitutional right to trial by a twelve-member jury was violated when the trial court erroneously dismissed a seated juror. We agree. We reverse the trial court's order and remand this cause to the trial court for further proceedings consistent with this opinion.

## BACKGROUND

Following voir dire, the trial court impaneled twelve jurors and an alternate juror.[1] During the course of the trial, the court dismissed two sitting jurors—Juror Turney and Juror Park.

## A. Juror Turney

Both parties took the stand at trial. During George's cross-examination, Monica's counsel asked whether George's former employer, Tim Smoot, had accused him of running his business into the ground and whether Mr. Smoot's attorney had been attempting to contact him regarding a claim by Mr. Smoot that George had cheated him in the business. George testified that Mr. Smoot had not made such accusations and that he had not been contacted regarding a claim by Mr. Smoot.

During the next recess, Juror Turney approached the bench and explained that he had done business with Mr. Smoot for many years and did not agree with Monica's counsel's insinuation that George was responsible for Mr. Smoot's business troubles, and had personal knowledge that Mr. Smoot was still in business. Juror Turney stated that he believed George. The trial court asked Juror Turney whether he could still be a fair and impartial juror. Juror Turney responded, somewhat indirectly, that he would like to explain his knowledge to other jurors "unless you tell me I can't bring up things that were not brought up between the lawyers, but I would like to." The trial court instructed Juror Turney not to share any of the information with the other jurors.

---

[1] In one sentence, George complains that because the extra juror was appointed *sua sponte* by the trial court, and "neither party knew of this appointment, the alternate was not subjected to the same *voir dire* screening, and the parties were not afforded additional peremptory challenges." George's brief does not include a clear and concise argument on this issue or appropriate citation to the record or authorities. *See* TEX. R. APP. P. 38.1(i); *Mañon v. Solis*, 142 S.W.3d 380, 391 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). Therefore, any argument as to the trial court's *sua sponte* appointment of an additional juror has been waived. *See Mañon*, 142 S.W.3d at 391.

Monica's counsel requested the court excuse Juror Turney. George's counsel objected, stating that the parties knew he was in the electrical business based on his juror information sheet, and that he could have been questioned on the subject at voir dire, but he was not. The court stated, "Maybe I'd be cautioned if we didn't have an extra juror, but we have an extra juror. There's no reason to take the risk here of impartiality or not or of extra information going into the jury room." The court then dismissed Juror Turney, replaced him with an alternate juror, and proceeded with trial.

## B. Juror Park

On the seventh day of trial, Juror Park called and left a message on the clerk's answering machine that he was ill and unable to attend trial due to a stomach ailment. The court held a hearing outside the presence of the jury in which the parties presented argument and authorities as to the propriety of proceeding with eleven jurors. The court called Juror Park and placed him on speaker phone. Juror Park stated that he had been having diarrhea all night and was unable to sleep. He vomited once that morning, took some ibuprofen, and slept a bit. He went on to say that "Right now I'm talking to you feeling great. In five or ten minutes, I might not. It's that kind of thing." The trial court dismissed Juror Park from the jury.

George's counsel suggested the court recess until the next day, and absolutely did not agree to proceed with eleven jurors. The trial court stated that eleven jurors remained and it had made a promise to those eleven jurors that they would be done with trial that day, and it was "not going to break that promise to the jury." The court explained that "[f]or those reasons, as well as others," the trial would continue with eleven jurors. George's counsel argued that twelve jurors were required and, given his testimony, Juror Park did not meet the constitutional test of disability. He asserted that Juror Park was suffering only from a very temporary illness. George's counsel repeatedly informed the court that he would move for mistrial in the event that

the court chose to proceed with eleven jurors. The trial court denied George's motion for mistrial and proceeded with an eleven-member jury.

JUROR DISMISSAL

During the course of the trial, the court dismissed two sitting jurors—Juror Turney and Juror Park—resulting in an eleven-member jury. George argues that the trial court erred in dismissing Juror Turney because he was not "disabled from sitting," and that this error was compounded when the trial court later dismissed Juror Park, who suffered from a stomach ailment. George asserts that dismissal of these jurors violated his right to trial by a twelve-member jury.

## A. Standard of Review and Applicable Law

The Texas Constitution provides that "[t]he right of trial by jury shall remain inviolate." TEX. CONST. art. I, § 15. This right "is one of our most precious rights, holding 'a sacred place in English and American history,'" *Gen. Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex. 1997), and we "closely scrutinize[]" its denial, *City of Garland v. Dall. Morning News*, 969 S.W.2d 548, 558 (Tex. App.—Dallas 1998), *aff'd*, 22 S.W.3d 351 (Tex. 2000).

A district court jury must consist of twelve jurors, unless not more than three of them die or become "disabled from sitting." *See* TEX. CONST. art. V, § 13; TEX. R. CIV. P. 292; *McDaniel v. Yarbrough*, 898 S.W.2d 251, 252 (Tex. 1995). In *McDaniel v. Yarbrough*, the Texas Supreme Court explained that "[w]hile trial courts have broad discretion in determining whether a juror is 'disabled from sitting' when there is evidence of constitutional disqualification, a trial court may not ignore the constraints established in *Waller*." 898 S.W.2d at 253. In *Houston & Texas Central Railway Co. v. Waller*, the court stated that the

> causes which disable the juror from sitting, and justify the extreme course of allowing, over a party's objection, a verdict to be rendered by the remainder of the jury, must be of a nature more directly showing his physical or mental incapacity

> than mere mental distress occasioned by the sickness of others, and the feeling that duty to the sick demanded his presence elsewhere.

56 Tex. 331, 337–38 (1882); *accord Yañes v. Sowards*, 996 S.W.2d 849, 850 (Tex. 1999) ("But not just any inconvenience or delay is a disability. A constitutional disability must be in the nature of 'an actual physical or mental incapacity.'"); *see McDaniel*, 898 S.W.2d at 252. "[A] juror's bias or prejudice cannot be equated with a total loss of mental powers such that a trial court would be justified in dismissing a juror and proceeding with a trial without the parties' permission." *City of Jersey Vill. v. Campbell*, 920 S.W.2d 694, 698 (Tex. App.—Houston [1st Dist.] 1996, writ denied). A trial court commits reversible error when it denies the constitutional right to trial by jury. *McDaniel*, 898 S.W.2d at 253.

**B.  Analysis**

The Texas Supreme Court addressed a similar situation in *McDaniel v. Yarbrough*. *See McDaniel*, 898 S.W.2d at 252. There, as here, the trial court removed a juror who was not constitutionally disabled. *See id.* (reviewing a trial court's decision to dismiss a juror because she was unable to return to the court due to heavy flooding). In the current case, the trial court dismissed Juror Turney because, at least in its view, in light of his statements with regard to Mr. Smoot, he posed a risk of impartiality and of extra information going to the jury room. As discussed in *Campbell*, any bias or prejudice Juror Turney may have had against the arguments of Monica's counsel was not a constitutional disability requiring dismissal. *See id.* Moreover, the record contains no evidence that Juror Turney suffered from any physical or mental impairment that would render him disabled from sitting. *See Yañes*, 996 S.W.2d at 850; *McDaniel*, 898 S.W.2d at 253; *Waller*, 56 Tex. at 337–38. Therefore, he was not disabled from sitting on a jury within the meaning of the Texas Constitution.

Also as in *McDaniel*, the verdict in this case was reached by less than twelve jurors. *See McDaniel*, 898 S.W.2d at 252. After dismissing Juror Turney, the trial court promptly replaced him with an alternate juror, bringing the number of members on the jury back to twelve.[2] On the final day of trial, the trial court dismissed Juror Park. The record is clear that Juror Park was physically ill. He had diarrhea, had vomited, and had difficulty sleeping, and did not know how long he would be sick. Thus, assuming without deciding that the trial court acted within its discretion in dismissing Juror Park as constitutionally disabled due to physical impairment, it is undisputed that Juror Park's dismissal reduced the number of members on the jury from twelve to eleven. *See Yañes*, 996 S.W.2d at 850; *McDaniel*, 898 S.W.2d at 253; *Waller*, 56 Tex. at 337–38. George objected to proceeding with eleven jurors and made a timely motion for mistrial, which the trial court overruled.

But for the trial court's dismissal of Juror Turney, the jury would have consisted of twelve members. By dismissing Juror Turney when he was not "disabled from sitting," the trial court deprived George of a full, twelve-member jury and denied him the right to jury trial guaranteed by the Texas Constitution. *See McDaniel*, 898 S.W.2d at 253. Therefore, the trial court abused its discretion in dismissing Juror Turney and overruling George's timely motion for mistrial.

---

[2] In his brief, George asserts that the trial court "deprived him of a fair trial regardless of the number of jurors because [the court] removed a juror who [was not disabled from sitting]." *Cf. Schlafly v. Schlafly*, 33 S.W.3d 863, 868 & n.2 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (recognizing that the question of when a trial court could replace a juror who was not disabled from sitting was one of first impression for that court, but not addressing the question because the appellant failed to properly brief it). Because we conclude that the jury was reduced to eleven members where one juror was excused without being disabled from sitting, we do not reach the question of when the trial court may replace a juror who is not disabled from sitting. However, such a question would impinge on constitutional protections to a trial by jury and, answered improvidently, could invite jury manipulation mischief. *See generally* TEX. CONST. art. I, § 15 ("The right of trial by jury shall remain inviolate."); *Scales v. State*, 380 S.W.3d 780, 786 (Tex. Crim. App. 2012) (reversing the trial court's judgment because it removed a juror when "the trial court had insufficient information from which to determine that [a juror] was not able to perform her duties as a juror").

## C. Conclusion

We conclude that the trial court abused its discretion in dismissing Juror Turney and overruling George's timely motion for mistrial. Because the "[d]enial of the constitutional right to trial by jury constitutes reversible error," no showing of harm is necessary. *See id.* Accordingly, we sustain George's first point of error.

### REMAINING ISSUES

Because we have concluded that George's constitutional right to a trial by jury was violated, and the appropriate remedy is to reverse the order and remand the cause for a new trial, we need not address George's other issues. *See* TEX. R. APP. P. 47.1. We overrule George's remaining issues as moot.

### CONCLUSION

By dismissing Juror Turney who was not "disabled from sitting," and overruling George's motion for mistrial after Juror Park's dismissal reduced the number of jurors to eleven, the trial court violated George's constitutional right to a trial by jury. Therefore, we reverse the trial court's Order in Suit to Modify Parent Child Relationship and remand this cause to the trial court for further proceedings consistent with this opinion.

Patricia O. Alvarez, Justice